United States District Court
Southern District of Texas
**ENTERED**
May 26, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GRAND VIEW PV SOLAR TWO, LLC, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-3572 |
| | § | |
| HELIX ELECTRIC, INC., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiffs Grand View PV Solar Two, LCC ("Grand View") and Centaurus Renewable Energy LLC's ("CRE") (collectively, "Plaintiffs") motion to remand. Dkt. 27. Due to the court's ruling on the remand motion, the court need not decide any of the other motions pending before the court. Having considered the motion (Dkt. 27), response (Dk. 49), reply (Dkt. 59), record evidence and applicable law, the court is of the opinion that the motion to remand should be GRANTED, the case should be REMANDED to the 113th Judicial District Court of Harris County, Texas, and all other pending motions (Dkts. 40, 60, 65, 70, 71, 76, 77, 80, 89, 91, 92) DENIED for want of jurisdiction.

**I. RELEVANT BACKGROUND**

The removed lawsuit involves a series of contracts between Plaintiffs and defendants—Helix Electric, Inc./Helix Electric of Nevada, Ltc. JV, a California Partnership ("Helix Partnership"), Helix Electric, Inc. ("Helix Electric"), Helix Renewables, a California Joint Venture ("Helix JV"), and Helix Electric of Nevada, LLC a/k/a Helix Electric, a Nevada Limited Liability Company ("Helix Electric, LLC") (collectively, "the Helix Entities" or "Defendants")—related to a project involving the construction of a photovoltaic power plant (the "Project"). As discussed below, the

parties entered into three contracts related to the Project—the Engineering Services Agreement ("ESA"), the Engineering Services and Procurement Agreement ("Procurement Agreement"), and the Mutual Confidentiality Agreement ("MCA")—but failed to consummate the final Project-related agreement, the Engineering, Procurement, and Construction Services Agreement ("EPC").

### A. The ESA Between Grand View and Helix JV

On May 18, 2015, Grand View and Helix JV entered into the ESA, under which Helix JV agreed to design a photovoltaic power plant for the Project in exchange for payment of $494,000.00. Dkt. 28, Ex. 2 at 2, 36. The ESA prohibited Helix JV from disclosing any confidential information owned by Grand View. *Id*. at 8, § 10. The ESA also required Helix JV to provide invoices to Grand View for work completed in accordance with a payment schedule. *Id*. at 4, § 2.2. On termination of the ESA, the ESA required that "[Helix JV] will deliver to [Grand View] or, at [Grand View's] direction, destroy, all records, notes, data, memoranda, models, and equipment of any nature that are in [Helix JV's] possession or under [Helix JV's] control and that are [Grand View's] property or relate to [Grand View's] business." *Id*. at 8, § 11. The choice of law and forum provision in the ESA stated in relevant part:

> **Applicable Law; Venue.** This Agreement will be governed by and construed and enforced under the laws of California, without regard to its conflicts of law principles. [Helix JV] consents to the jurisdiction of and venue in the state and federal courts located in California and will not initiate any action against [Grand View] in any other location.

*Id*. at 9, § 18.

### B. The Procurement Agreement Between Grand View and Helix JV

Approximately one month later, on June 25, 2015, Grand View and Helix JV entered into the Procurement Agreement pursuant to which Helix JV agreed to provide design and engineering services in connection with the substation portion of the Project and to procure certain long lead

2

materials. Dkt. 29, Ex. 1 at 2. In exchange for performing these services and procuring the necessary pieces of equipment, Grand View agreed to pay Helix JV a total of $39,949,268.40 in accordance with a payment schedule. *Id*. at 33. Among other things, the Procurement Agreement required Helix JV to provide invoices to Grand View. *Id*. at 4, § 2.2. On termination of the Procurement Agreement, the Procurement Agreement provided that "[Helix JV] will deliver to [Grand View] or, at [Grand View's] direction, destroy, all records, notes, data, memoranda, models, and equipment of any nature that are in [Helix JV's] possession or under [Helix JV's] control and that are [Grand View's] property or relate to [Grand View's] business." *Id*. at 8, § 11. The choice of law provision of the Procurement Agreement stated in relevant part:

> **Applicable Law; Venue.** This Agreement will be governed by and construed and enforced under the laws of California, without regard to its conflicts of law principles. [Helix JV] consents to the jurisdiction of and venue in the state and federal courts located in California and will not initiate any action against [Grand View] in any other location.

*Id*. at 9, § 18.

### C. The MCA Between CRE and Helix Electric, LLC

On August 18, 2015, CRE and Helix Electric, LLC entered into the Mutual Confidentiality Agreement ("MCA") in light of another potential agreement—the EPC—between Grand View and Helix JV, under which Helix JV would actually construct the project. Dkt. 29, Ex. 2; Dkt. 28, Ex. 1 at 3 (Declaration of Stephen Douglas, CRE's general counsel). Around the time the Helix Entities and Grand View began negotiating the terms of the EPC, CRE was in the process of acquiring Grand View. *Id*. Consequently, CRE became involved in the negotiations with the Helix Entities and the parties executed the MCA. Under the MCA, CRE and Helix Electric, LLC agreed that certain confidential information (i.e., the "Evaluation Material") exchanged pertaining to "potential business transactions . . . involving solar photovoltaic projects" would remain confidential. Dkt. 29, Ex. 2

3

at 2. At the time the MCA was executed, the proposed EPC was the only contemplated transaction involving a solar photovoltaic project. Dkt. 28, Ex. 1. at 3, ¶ 5 (Declaration of Stephen Douglas). Indeed, one of the purposes of the MCA was to protect confidential information disclosed in the course of negotiating the EPC. *Id.*

Under the MCA's governing law provision, the parties and their "subsidiaries and affiliated companies" agreed:

> The Parties hereto hereby irrevocably and unconditionally consent **to the sole and exclusive jurisdiction of the courts of Harris County in the State of Texas for any action, suit, or proceeding arising out of or relating to this Agreement or the Proposed Transaction, and agree not to commence any action, suit or proceeding related thereto except in such courts.** The Parties hereto further hereby irrevocably and unconditionally waive any objection to the laying of venue of any action, suit or proceeding arising out of or relating to this Agreement in the courts of Harris County in the State of Texas, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

Dkt. 29, Ex. 2 at 5, § 15 (emphasis added).

Although Grand View is not a signatory to the MCA, Plaintiffs assert that Grand View is a party because it is a CRE subsidiary. Dkt. 59 at 3. Plaintiffs now contend that the above provision waived Helix Electric, LLC's right to remove this lawsuit.

### D. Events Leading up to the Lawsuit

On September 10, 2015, CRE acquired Grand View. Dkt. 27 at 7. In October of 2015, during negotiations of the potential EPC, Grand View asked the Helix Entities to provide suitable documentation to account for how the funds previously paid to them were used. Dkt. 28, Ex. 1 at 4, ¶ 7. However, according to Plaintiffs, the Helix Entities refused Grand View's repeated requests for documentation. *Id.*

4

Towards the end of October of 2015, negotiations between the parties broke down. On October 26, Helix Electric's president sent an email to CRE stating: "It has come to our attention that [CRE] and Clenera may have disclosed certain Evaluation Material (that our company provided) to third parties (including competitors of Helix Electric), without Helix's authorization . . . such a disclosure would be a breach of the Agreements." Dkt. 30, Ex. 1 at 2. Plaintiffs responded by denying that they had breached the MCA. Dkt. 68, Ex. 2 at 2–3. On October 29, 2016, counsel for Helix Electric sent an additional email further accusing CRE of breaching the MCA:

> Helix has been informed (and reasonably believes) that (i) [CRE] and/or Clenera have disclosed to one or more of Helix's competitors, including Swinerton Renewable Energy ("Swinerton"), the negotiated pricing structure Helix obtained from its vendors in an effort to reduce the overall price of the Project and perhaps other information that was exchanged between Helix and [CRE]/Clenera (collectively, "Information"), (ii) Swinerton (and perhaps others) have used such Information to compete against Helix on the Project, and (iii) [CRE]/Clenera have breached the Agreements by disclosing the Information to Swinerton (and perhaps others) . . . Please consider [CRE] having been placed on notice of Helix'[s] legitimate concerns.
>
> Be advised that unless (i) [CRE] (and Clenera) immediately remedies its/their breach (as requested in Helix' October 26, 2015 letter), and (ii) advise Helix that it has complied with the reasonable requests made in Helix October 26 letter, **Helix intends to exercise its rights under Section 8 of the [MCA] and pursue a breach of contract claim against** [CRE] and Clenera. Finally, should litigation be required, Helix will seek recovery of any and all attorneys' fees and costs incurred in pursuing its claims.

Dkt. 30, Ex. 1 at 3–4 (emphasis added).

On November 19, 2015, Grand View and CRE sent a notice terminating the ESA and the Procurement Agreement. Dkt. 53, Ex. 1. On that same day, Plaintiffs filed their original petition in the 113th Judicial District Court of Harris County. Dkt. 1, Ex. 1. In the original petition, Plaintiffs asserted claims against the Helix Entities for: (1) breach of contract; (2) unjust enrichment; (3) conversion; (4) constructive trust under California Civil Code section 2223; (5) declaratory relief;

5

(6) attorney's fees and costs; and (7) request for accounting. *Id*. The petition also included an application for a temporary restraining order and temporary and permanent injunction. *Id*. Plaintiffs allege that the Helix Entities breached the ESA and the Procurement Agreement by failing to turn over $3,896,916 in Project funds, as well as "Materials," "Invoices," and "Work Product." *Id*. at 8 ("Helix [Electric] and Helix [JV] breached the ESA and the Procurement Agreement."). Additionally, Plaintiffs requested that the court issue a declaratory judgment to determine the rights of the parties under the MCA. *Id*. at 12 ("Specifically, it asks that the Court determine that CRE did not disclose confidential 'Evaluation Material' to anyone who was not a 'Receiving Party' as those terms are defined under the MCA.").

On December 7, 2015, Grandview and CRE filed their first amended complaint. Dkt. 6, Ex. 1. In addition to the relief sought in the original petition, Grand View requested that the unspent funds, if any, paid by Grand View to Helix JV be held in constructive trust for Grand View's benefit. Grand View also sought a temporary restraining order requiring the Helix Entities to segregate any unspent funds, and alleged additional breaches of the ESA and the Procurement Agreement. *Id*. On that same day, the Helix Entities filed an original complaint in the Southern District of California. Dkt. 30, Ex. 4. In their original complaint, the Helix Entities brought breach of contract claims against Grand View, alleging that Grand View wrongfully terminated the ESA and the Procurement Agreement. *Id*. at 3–8. Among other things, the Helix Entities complained that Grand View "shopped Helix's price for the Project to Helix's competitors." *Id*. at 6. On December 8, 2015, Helix Electric filed and served its notice of removal of Plaintiffs' first amended complaint. Dkt. 1. On January 7, 2016, Plaintiffs filed this motion to remand. Dkt. 27. Defendants filed their response in opposition to the motion (Dkt. 47), to which Plaintiffs filed a reply (Dkt. 59).

## II. Plaintiffs' Motion to Remand

### A. Legal Standard for Removal

A defendant may remove a civil action to federal court if that court would have had original jurisdiction over the case. 28 U.S.C. § 1441(a). The party seeking removal bears the burden of establishing federal jurisdiction. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). This statutory right to removal is strictly construed because "removal jurisdiction raises significant federalism concerns." *Id*. (citations omitted). "[A]ny doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

For diversity jurisdiction, the amount in controversy must exceed $75,000 and complete diversity must exist between all parties. 28 U.S.C. § 1332(a). However, even if both of these conditions are met, a contractual clause prevents a party from exercising its right to removal when it gives a 'clear and unequivocal' waiver of that right. *Ensco Int'l, Inc. v. Certain Underwriters at Lloyd's*, 579 F.3d 442, 443 (5th Cir. 2009) (citing *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004)). There are three ways in which a party may clearly and unequivocally waive its removal rights: (1) by explicitly stating that it is doing so, (2) by allowing the other party the right to choose venue, or (3) by establishing an exclusive venue within the contract. *Id.* at 443–44. "Although waiver must be clear and unequivocal, it may be implicit where necessary to give effect to all contractual provisions." *Id.* at 445.

### B. Defendants' Waiver of Removal Rights

Plaintiffs argue that Defendants waived their right to remove this lawsuit under the venue

provision in the MCA by consenting to the exclusive jurisdiction of the courts of Harris County.[1]

Dkt. 27 at 9. Under the MCA, Helix Electric, LLC and its "subsidiaries and affiliated companies" agreed

> to the sole and exclusive jurisdiction of the courts of Harris County in the State of Texas **for any action, suit, or proceeding arising out of or relating to this Agreement or the Proposed Transaction, and agree not to commence any action, suit or proceeding related thereto except in such courts.**

Dkt. 29, Ex. 2 at 5, ¶ 15 (emphasis added).

Contracting parties are free to waive removal rights by establishing an exclusive venue under a forum selection clause. *Ensco Int'l*, 579 F.3d at 443–44. "For a contractual clause to prevent a party from exercising its right to removal, the clause must give a 'clear and unequivocal' waiver of that right." *Id*. at 443 (quoting *City of New Orleans*, 376 F.3d at 504).

Plaintiffs assert that Helix Electric, LLC waived its right to remove this lawsuit by agreeing to the exclusive jurisdiction of and unconditionally waiving objections to venue "in the courts of Harris County." Dkt. 27 at 10 (citing *Dixon v. TSE Int'l, Inc.*, 330 F.3d 396, 397 (5th Cir. 2003) (holding that by stipulating to the exclusive jurisdiction of and unconditionally waiving objections to venue and forum "in the Courts of Texas," the defendant waived its right to remove because federal district courts geographically located *in* Texas are not courts *of* Texas)).

The court agrees that the above provision is a "clear and unequivocal" waiver of Helix Electric, LLC's right to remove "any action, suit, or proceeding arising out of or relating to [the MCA] or the Proposed Transaction." Dkt. 29, Ex. 2 at 5, ¶ 15. However, this does not end the inquiry. Defendants raise two arguments as to why the MCA's forum selection clause does not

---

[1] In addition to waiver, Plaintiffs make several other arguments in favor of remand. Dkt. 27 at 2. Because the court finds that Defendants have waived their right to remove this lawsuit, it need not analyze Plaintiffs' remaining arguments.

preclude Defendants from removing this lawsuit: (1) Grand View, a non-party to the MCA, cannot enforce the MCA's forum selection clause with respect to Grand View's claims; and (2) Grand View's claims fall outside the scope of the MCA. Dkt. 49 at 13–14. For the reasons discussed below, the court rejects each of these arguments.

### 1. Whether Grand View Can Enforce the MCA

The parties dispute whether Grand View is a party to the MCA. Defendants assert that Grand View was never a party to the MCA and therefore cannot enforce its forum selection clause. Dkt. 49 at 13. On August 18, 2015, CRE and Helix Electric, LLC (along with their subsidiaries and affiliated companies) entered into the MCA. Dkt. 57, Ex. 2 at 1. On September 10, 2015, CRE became Grand View's parent company when it purchased a 100% ownership interest in Grand View through its single asset subsidiary CRE-Grand View Idaho, LLC. Dkt. 28, Ex. 1 at 1 (Declaration of Stephen Douglas). Accordingly, Defendants claim that Grand View was not affiliated with CRE at the time the MCA was executed because the acquisition closed weeks later. Therefore, they assert that because Grand View was never a party to the MCA, the MCA does not govern Grand View's claims.

Plaintiffs assert that although Grand View was not a signatory, it was a party to the MCA because it was a subsidiary of, or affiliated with CRE at the time the MCA was executed, pointing out that the parties intended for Grand View to be bound by the same confidentiality obligations imposed on the Helix Entities and CRE. Dkt. 59 at 3. Regardless of whether Grand View is bound by the MCA, it is undisputed that CRE has standing to enforce the MCA's forum selection clause. *Id*. at 4. Accordingly, CRE can enforce the provision against Defendants regardless of whether Grand View can enforce it. Defendants suggest that both CRE *and* Grand View must have standing to enforce the MCA's forum selection clause because "the MCA does not govern Grand View's

9

claims." Dkt. 49 at 13. However, the express terms of the MCA do not require a claim-by-claim analysis,[2] as Defendants suggest. Dkt. 29, Ex. 2 at 5, ¶ 15. Rather, the MCA's forum selection clause applies broadly to any "action, suit or proceeding" arising out of or relating to the MCA or the Proposed Transaction. *Id*.

### 2. Whether this Lawsuit Relates to the MCA or the Proposed Transaction

In this case, the court is presented with two forum selection clauses: (1) the California forum selection clauses in the ESA and the Procurement Agreement and (2) the state of Texas forum selection clause in the MCA. The California forum selection clauses, which bind *only* the Helix Entities, did not preclude Grand View from filing this lawsuit in Harris County, Texas. The Texas forum selection clause contained in the later-executed MCA, on the other hand, binds both parties and applies broadly to "any action, suit, or proceeding . . . relating to [the MCA] or the Proposed Transaction." Dkt. 29, Ex. 2 at 5, ¶ 15.

Defendants argue that the MCA's forum selection clause does not apply to this lawsuit because some of the claims asserted by Plaintiffs fall outside the scope of the MCA. Dkt. 49 at 14. They point out that the first amended complaint asserts claims for breach of the ESA and the Procurement Agreement, but does not assert a claim for breach of the MCA. Although CRE does not allege that the Helix Entities breached the MCA,[3] it does assert a declaratory relief claim against

---

[2] In their motion to transfer venue, Defendants request that in the alternative, the court use its discretion to split Plaintiffs' claims under the Project-related Procurement Agreement and ESA, from claims arising from the Project-related MCA. Dkt. 49 at 14–17. The court declines such invitation. Claim splitting is discouraged in the Fifth Circuit. *See El Aguila Food Prods., Inc. v. Gruma Corp.*, 167 F. Supp. 2d 955, 960 (S.D. Tex. 2001) ("A party is not entitled to severance when it would prolong the ultimate termination of an action, add to the cost of resolving the lawsuit, create duplicitous litigation or increase the likelihood of inconsistent verdicts.").

[3] Plaintiffs do assert a claim for breach of the MCA in their second amended complaint. Dkt. 36 at 11 ("Defendants breached the MCA by removing the instant litigation from the Harris County state court, filing the California Lawsuit, and/or filing their Rule 12(b)(2) Motion."). The court, however, did not consider Plaintiffs' second amended complaint in deciding the remand motion because Plaintiffs' first amended complaint was the operative complaint at the time of removal. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

Helix Electric, LLC and its affiliates to establish an affirmative defense that CRE did not disclose Evaluation Materials in breach of the MCA. *Id*. at 12, ¶ 36. Defendants complain that "[t]he only claim in the [first amended complaint] relating to the MCA is CRE's anticipatory declaratory relief claim," which they assert is "transactionally unrelated to Grand View's claims under the ESA and the Procurement Agreement." *Id*. at 17. Defendants therefore admit that CRE's claim relates to the MCA, but take issue with the fact that the MCA claim does not sufficiently relate to Grand View's claims under the ESA and the Procurement Agreement. They also suggest that Plaintiffs must assert an affirmative claim for breach of the MCA to invoke the MCA's forum selection clause. Dkt. 49 at 15. Defendants fail to cite any case law to support their proposition that one must assert an affirmative claim for breach of the contract containing the forum selection clause in order to invoke the clause's applicability. Moreover, Defendants' arguments—(1) that the MCA claims must be sufficiently related to the ESA and the Procurement Agreement claims and (2) that Plaintiffs must assert a breach of the MCA—ignore the plain language of the clause. The applicability of the MCA's forum selection clause turns on whether this lawsuit is an "action, suit or proceeding arising out of or relating to the [MCA] *or* the Proposed Transaction [the EPC]." Dkt. 59 at 4 (citing Dkt. 29, Ex. 2 at 5) (emphasis added).

After considering the circumstances under which the MCA was executed, the parties' relationships, how each of these contracts relate to the Project, and the events leading up to the filing of this lawsuit, it becomes evident that this lawsuit is an "action, suit or proceeding arising out of or relating to" the MCA and the Proposed Transaction. Dkt. 29, Ex. 2 at 5, ¶ 15. Grand View and the Helix Entities undertook phase one of the Project when they executed the ESA, under which Helix JV agreed to perform design services for the Project. Dkt. 29, Ex. 1. Shortly thereafter, the parties entered into phase two of the Project by executing the Procurement Agreement, pursuant to

which Helix JV agreed to procure certain materials and provide design and engineering services in connection with the substation portion of the Project. Dkt. 29, Ex. 1 at 2. Finally, the MCA was executed in order to protect the parties' confidential information during the course of negotiating what would have been phase three of the Project (i.e. the Proposed Transaction), whereby Helix JV would actually construct the Project. Dkt. 28, Ex. 1 at 2, ¶ 4 (Declaration of Stephen Douglas). After negotiations broke down, Helix Electric sent two emails to CRE accusing it of breaching the MCA by disclosing certain confidential information revealed during negotiations, stating that unless CRE remedied its breach, "Helix intend[ed] to exercise its rights under Section 8 of the [MCA] and pursue a breach of contract claim against [CRE]." Dkt. 30, Ex. 1 at 3–4. A few weeks later, Plaintiffs filed this lawsuit, asserting various claims including a claim requesting that the court determine that CRE did not disclose confidential Evaluation Material in breach of the MCA. Dkt. 1, Ex. 1 at 12. The Helix Entities responded by filing their original complaint in the Southern District of California. Dkt. 30, Ex. 4. Although their complaint does not assert a claim for breach of the MCA, the crux of the complaint is the allegation that Grand View unfairly "shopped Helix's price for the Project to Helix's competitors." *Id*. at 6.

Even if Plaintiffs' sole MCA-related claim, by itself, is insufficient to invoke the forum selection clause, the above facts make it clear that this lawsuit relates to the Proposed Transaction. *See* Dkt. 29, Ex. 2 at 5 (consenting to the sole and exclusive jurisdiction of the courts of Harris County for "any action, suit or proceeding arising out of or relating to the [MCA] *or* the Proposed Transaction [the EPC]") (emphasis added). The Proposed Transaction simply refers to the potential EPC agreement, whereby the Helix Entities would construct the Project. Plaintiffs' first amended complaint asserts a combination of claims arising under the ESA, the Procurement Agreement, and the MCA, all of which relate to the Project. Dkt. 6, Ex. 1. Indeed, all three of these contracts refer

to "the Project." Dkt. 29, Ex. 1 at 2, 32; Dkt. 52, Ex. 1 at 3, 33; Dkt. 29, Ex. 2 at 2. Accordingly, the removed lawsuit is an "action, suit, or proceeding arising out of or relating to" the MCA and the Proposed Transaction (i.e., the Project). Therefore, Helix Electric, LLC waived its right to remove this lawsuit.

### C. Helix Electric, LLC's Waiver Forecloses Helix Electric's Removal

Removal requires unanimous consent from all defendants. *Brown v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir. 1986). When one defendant waives its removal rights, as Helix Electric, LLC has done in this case, co-defendants may not remove to federal court. *See id*. (finding that the first-served defendants' waiver prevented removal by a later-added defendant under the unanimity of consent rule); *Ondava Ltd. v. Manila Indus., Inc.*, No. CIV A 307-CV-1812-D, 2007 WL 4104192 at *3–5 (N.D. Tex. Nov. 19, 2007) (relying on *Brown* to remand because one defendant could not consent to removal pursuant to a binding forum selection clause under which it waived removal); *see also Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1047 (11th Cir. 2001) (holding that, because a defendant was bound by forum selection clause, the defendant could not join removal, and remanding the case). Therefore, because removal requires unanimous consent from all defendants, Helix Electric may not remove this lawsuit to federal court because its co-defendant, Helix Electric, LLC, waived its removal rights.

### D. Attorneys' Fees

Plaintiffs seek an award of fees and expenses under 28 U.S.C. § 1447(c). Dkt. 27 at 22. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S. Ct. 704, 163 (2005) (citing *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538,

541 (5th Cir. 2004); *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000)). Because the court finds that Defendants had an objectively reasonable basis to argue that their removal rights were not waived, Plaintiffs' request for attorneys' fees is DENIED.

### III. CONCLUSION

The court finds that the Defendants waived their right to remove this lawsuit. Therefore, Plaintiffs' motion to remand (Dkt. 27) is GRANTED. It is further ORDERED that Plaintiffs' request for attorneys' fees and costs is DENIED, and all other pending motions are DENIED for want of jurisdiction. This case is REMANDED to the 113th Judicial District Court of Harris County, Texas.

Signed at Houston, Texas on May 26, 2016.

_____
Gray H. Miller
United States District Judge